Gildea, et al. *v.* Pittsburgh.
Joyce, et al. *v.* Pittsburgh.

Argued February 22 and 24, 1972,

*Fred E. Baxter, Jr.,* with him *Mansmann, Beggy, McVerry and Baxter,* for appellants, Joyce and Cuneen.

*Peter J. Mansmann,* with him *James A. Wymard,* for appellees, Gildea, et al.

*Frederick A. Boehm,* First Assistant City Solicitor, with him *Daniel Curtin,* Assistant City Solicitor, *Eugene B. Strassburger, III,* Executive Assistant City Solicitor, and *Ralph Lynch, Jr.,* City Solicitor, for appellants-appellees, City of Pittsburgh, et al.

OPINION BY PRESIDENT JUDGE BOWMAN, May 11, 1972:

These two appeals arise out of unrelated factual backgrounds but both involve the statutory power of the Mayor of Pittsburgh or its Director of Public Safety to suspend allegedly insubordinate police officers from the Pittsburgh Bureau of Police either initially or after hearing before a police trial court for definite or indefinite periods of time.

Robert Gildea and thirty-three other police officers were suspended from their duties by the Director of the Department of Public Safety in late 1970. Officials of the Bureau of Police had begun an investigation into the payment of court witness fees to certain police officers and discovered that some thirty-four police officers had received substantial court witness fees to which they were not entitled. The Superintendent of Police on the basis of the investigative report preferred

charges against these officers and recommended disciplinary action.

The Public Safety Director ordered police trial courts convened to examine the charges pursuant to the Policemen's Civil Service Act of August 10, 1951, P. L. 1189, as amended, 53 P.S. §23531. Before such police trial courts were actually convened, the police officers were suspended from duty without pay.

The police trial courts subsequently met to dispose of the charges but in all cases continued the hearings pending disposition of possible criminal charges being filed against the suspended police officers. Further, these police trial courts ordered the police officers restored to duty with pay in the interim. In fact, no criminal charges were ever filed against any of them.

The Mayor of Pittsburgh concluded that the police trial courts lacked power to order such restorations and continued the suspensions. The police trial courts then reconvened, took testimony and examined evidence, and concluded in all cases that the police officers had received the questioned court witness fees by mistake. Suspensions ranging from twenty-five to fifty-eight days were imposed.

Upon reviewing the various police trial court transcripts and findings, the Mayor determined that the police trial courts had in all cases totally disregarded the evidence before them and abused their discretion. He disapproved their conclusions. By individual letter to each police trial court and police officer, the Mayor advised that the original suspensions imposed by the Public Safety Director would continue in effect pending further administrative action and disposition of the criminal charges.

Thirty-one of the affected policemen filed a complaint in equity in the Court of Common Pleas of Allegheny County seeking to enjoin the suspensions as re-

instated by the Mayor. A Chancellor (HESTER, J.) heard argument on a request for a preliminary injunction, having refused a previous petition for ex parte preliminary injunctive relief. After hearing, a preliminary injunction issued ordering the policemen restored to duty pending new hearings by police trial courts to be promptly convened. The Mayor appealed from the granting of such preliminary relief to this Court. At the time of argument of the appeal before this Court, new police trial courts had not been convened.

Barry M. Joyce and Daniel J. Cuneen, two officers employed by the Pittsburgh Bureau of Police, were involved in an incident on September 24, 1971 where they were alleged to have fired their service revolvers so as to seriously wound a fleeing felon. On the basis of this incident, the Mayor ordered that Joyce and Cuneen be suspended from duty without pay; the City of Pittsburgh concurrently filed criminal charges against both officers charging them with assault with intent to kill.

Within six days of the suspension, a police trial court was convened to hear evidence on the Mayor's charges supporting his suspension actions for violations of the Bureau regulations as to the use of firearms. Following hearing, the police trial court ordered the officers restored to duty pending final disposition of the criminal charges.

The Mayor reviewed the determinations and conclusions to restore these two officers to full duty by the police trial court and disapproved the decision by opinion dated October 5, 1971. The opinion concluded that both officers had violated the firearm regulations promulgated by the Bureau of Police. The suspension order issued by the Mayor indicated that Joyce and Cuneen would continue to be suspended from duty for a period of one hundred and twenty days dating back to

September 24, 1971 unless modified by the Civil Service Commission on appeal.

At the time this appeal was filed, the criminal charges were still pending.

No appeal was taken from this order to the Civil Service Commission but the suspended officers, believing the Mayor's opinion and order to be an unlawful exercise of his statutory powers, instituted a complaint in equity in the Court of Common Pleas of Allegheny County. The complaint alleged that the Mayor had failed to properly notify them of his disapproval order and had otherwise reinstated the suspensions without legal authority. After hearing before a Chancellor (McCarthy, J.) upon the officers' petition for preliminary injunction to set aside the suspensions, the requested relief was denied. Joyce and Cuneen filed an appeal from the denial of preliminary injunctive relief to this Court.

In these appeals, one from the granting of a preliminary injunction and the other from the refusal to do so, our scope of reviewing would normally be limited to the narrow issue of whether the Chancellor had reasonable grounds for his action. *McMullan v. Wohlgemuth et al.*, 444 Pa. 563, 281 A. 2d 836 (1971).

In each case, however, instead of restricting himself to the issue of whether a preliminary injunction should be granted, the Chancellor addressed himself to the merits and reached legal conclusions on substantive issues, which conclusions in the two cases are not wholly consistent.[1]

---

[1] In the first case the Chancellor (Hester, J.) acted upon a complaint in equity seeking only a preliminary injunction until full hearing and a stipulation of the parties that the facts were not in dispute. In the second case the Chancellor (McCarthy, J.) acted upon a complaint in equity, an ancillary petition for preliminary injunction, the averments of which he accepted as true without a stipulation of counsel to that effect. In the first case the opinion

Thus we are called upon by the parties to pass upon the substantive legal issues involved in these cases on appeals from the granting and refusal to grant a preliminary injunction. Under ordinary circumstances we would not do so. However, because of the public interest in and importance of these cases already too long delayed and without any indication that they have proceeded one step towards conclusion on their merits in the lower court, we shall consider them on their merits.

Generally speaking, the Act of 1951 was enacted to provide a complete and independent system for the appointment, promotion, suspension, reduction, removal and reinstatement of employees of the bureau of police in second class cities except certain ranking officers. The construction to be placed upon certain provisions of Sections 7 and 8 of this statute is the underlying issue in these appeals.

Procedure for the suspension of covered employees is found in Section 7 which provides, *inter alia,* as follows: "No employe in the competitive class in any bureau of police in any city of the second class, except any such employe who has been convicted of a felony and whose appellate remedies have been exhausted shall be removed, discharged or suspended for a period exceeding ten days as a penalty, or reduced in rank or pay

---

is characterized as an adjudication and decree nisi which is dated July 16, 1971 and which, among other things, directed a prompt convening of new police trial courts. In the second case the Chancellor issued a memorandum opinion and order dated October 13, 1971 denying the requested injunction with direction that the case proceed on its merits. At the time of argument before this Court, new police trial courts had not been convened in direct violation of the Chancellor's order in the first case, and no further proceedings in the second case have taken place notwithstanding the order. Under these circumstances we are without the benefit of an en banc opinion of the Court of Common Pleas of Allegheny County notwithstanding inconsistent opinions of the Chancellors on the merits.

without his written consent, except for just cause, which shall not be religious or political; nor, in any event, except by the decision of a court, either of trial or inquiry, duly determined and certified in writing to the mayor and approved in writing by the mayor. . . ." 53 P.S. §23537.

This same section also makes provision for suspensions at the discretion of the Director of Public Safety in the following language: "It shall be lawful for the director of the department of public safety, at his discretion, to suspend from duty before trial any employe charged, as aforesaid, until such trial can be had, with or without pay as such court shall afterwards determine, but no trial shall be delayed for more than ten days following the date of suspension."

Section 8, while essentially concerned with procedures for civil service commission review and judicial review of decisions of police trial courts, also bears upon the issues here raised. In pertinent part, this section provides: "After full and complete hearing, the court of trial or inquiry shall determine its decision which shall be promptly certified in writing to the mayor. After approval by the mayor in writing, the director of the department of public safety shall notify the accused in writing of such decision, including the penalty, if any. . . . Within ten days following the receipt of the written notice of the director of the department of public safety, if served personally, or within ten days from the date of the mailing of such written notice by the director of the department of public safety to the last known address of the accused employe, the accused employe shall have the right to appeal to the civil service commission of such city. The civil service commission shall review the entire record, including the testimony before the court of trial or inquiry, and shall have the right to affirm, modify or revoke the decision of the

court of trial or inquiry. . . . If the civil service commission shall fail to sustain the decision of removal of the officer, the person sought to be removed shall be reinstated with full pay for the entire period during which he has been prevented from performing his usual employment, and no charges shall be recorded against him. In the event the decision shall be modified or sustained by the civil service commission, the person penalized shall have the right to appeal, by petition to the court of common pleas of the county, within thirty days after receipt of written notice of such action by the civil service commission. . . . In every case so appealed to the court of common pleas of the county, the court shall hear the charges made against the accused de novo. . . . The issue before the court shall be whether the action of the trial court shall be affirmed or modified in any respect or whether the charges should be dismissed. Where any policeman has been suspended by the action of the trial court and the charges are dismissed on appeal, the policeman shall receive full compensation for the entire period of suspension." 53 P.S. §23538.

The City, as appellant in the first appeal and as appellee in the second, contends that these two sections, considered together, empower the Mayor acting as or through the Director of Public Safety to suspend police officers in his discretion for definite or indefinite periods of time, (a) until he has approved a decision of a police trial court or (b) until review by the civil service commission of an appeal to it by the police officer from a decision of a police trial court which has been *disapproved* by the Mayor.

The police officer appellees in the first appeal and the police officer appellants in the second appeal contend, on the other hand, that the power of the Director of Public Safety to suspend a police officer is limited

in all events to ten days and the right of appeal by a police officer to the Civil Service Commission ripens only upon an *approval* by the Mayor of a police trial court decision.

The broad power of suspension vested in the Mayor as advanced by the City does not have the unqualified support of either Chancellor. Judge HESTER reaches a contrary conclusion and Judge McCARTHY states that ". . . the statutory provisions . . . would seem to indicate . . . no policemen may be suspended for more than ten days. . . ." Judge McCARTHY, however, does support the City's contention that a right of appeal to the Civil Service Commission is afforded a police officer from either an approval or *disapproval* by the Mayor of a police trial court decision. In reaching this conclusion, Judge McCARTHY observed that any other conclusion would result in ". . . an exercise in futility . . ." if the charges preferred are to be retried again and again in the hope that the police trial court or the Mayor will relent.

Judge HESTER, on the other hand, declares a police trial court-mayor stalemate to be an unfinished proceedings requiring the convening of a new police trial court whose decision wins the Mayor's approval, presumably so many times as necessary to do so. This position is supported by the decision of the Court of Common Pleas of Allegheny County in *Morrone v. Barr*, 112 Pitts. L.J. 95 (1964) involving different facts but turning on the provisions of the statute here in question. The issue of whether a right of appeal to the Civil Service Commission from a decision of a police trial court exists if the Mayor *disapproves* the decision was not in the first appeal and Judge HESTER did not consider it.

We have carefully reviewed the provisions of Sections 7 and 8 of the Act of 1951 and the opinions of the

Chancellors in these two appeals which construe them. It is our considered opinion that all of the contested provisions can be given significant meaning without doing violence to other provisions and none need be characterized as irreconcilable simply to reach a desired result. How futile or nonfutile two or more police trial court decisions may be before winning the Mayor's approval, we need not and should not determine nor rely upon in search of legislative intent. We believe that the legislature required such approval and we cannot ignore it under a canon of statutory construction that the legislature did not intend a vain or foolish act. It may well be that the legislature recognized a significant role to be played by public opinion if either the police trial court or the Mayor exhibited irresponsibility in acting. It may also well be that the legislature had sufficient faith in the system it established that on a second police trial court proceeding, both the court and the Mayor would be amenable to compromising prior differences. In any event, approval of the Mayor is clearly required and we agree with Judge HESTER that, upon a disapproval, the proceedings remain unfinished and mandate all concerned to promptly convene a new police trial court. We might also add that a police trial court duly convened must proceed to perform its duties and render its decision on the merits. Deciding not to act pending disposition of pending or possible criminal charges is not within its powers.

We are also of the opinion that the statutory provisions in question afford the Mayor acting as or through the Director of Public Safety very limited powers of suspension. Section 7 flatly declares that no covered employee, except those finally convicted of a felony, shall be suspended for a period exceeding ten days, except for just cause which shall not be religious or political nor, in any event, except by a decision of a police

trial court. The later provision of that section, declaring it to be lawful to suspend from duty before trial any employee charged until the trial can be had, affords only limited additional suspension powers. In our opinion, these two provisions taken together empower suspensions for a period not exceeding ten days or of indefinite duration exceeding ten days until the police trial court has rendered its decision. At this point the executive power of suspension is exhausted.

Considering the statutory provisions of Sections 7 and 8 in their entirety, we believe the legislature intended that the suspension of covered employees, their police trial court action if called for, the decision of the police trial court and its approval by the Mayor and administrative review thereof are to be governed as follows:

1. Suspension of police officers for a period not exceeding ten days is authorized for disciplinary reasons when justified in the opinion of the Director of Public Safety.

2. Suspensions of police officers for a period in excess of ten days for just cause are authorized but such suspensions shall be effective only for the designated period of suspension or until a decision on the *merits of the charge* is rendered by a police trial court, whichever shall first occur.

3. A suspension in effect at the time of the decision of the police trial court shall terminate on that date unless the decision of the police trial court provides for an extended suspension, in which event the suspension shall continue until its termination date as fixed by or determined from the police trial court decision.

4. Neither the Mayor nor the Director of Public Safety has any power or authority to continue, reinstate or impose a new suspension relative to the charges in issue inconsistent with the decision of the police trial

court pending the Mayor's action on the police trial court's decision or after his disapproval thereof.

5. Upon a disapproval by the Mayor of a police trial court decision, a new trial court shall be promptly convened to act upon the charges preferred and it shall render a decision on the merits after considering the evidence, the prior trial court's decision and the Mayor's reasons for disapproving the same.

6. In the event the decision of the new police trial court provides for a suspension in excess of the number of days of suspension served by the police officer as imposed by the Director of Public Safety or as fixed by the first police trial court decision, suspension of the police officer shall be reinstated for the designated additional number of days.

7. In the event the Mayor disapproves the decision of the second police trial court convened to hear the charges preferred against a police officer, the procedure shall be repeated until such time as a police trial court's decision meets with the Mayor's approval.

8. A police officer's right to appeal to the Civil Service Commission arises only upon an approval of a police trial court's decision by the Mayor. Until such an approval, the proceedings remain unfinished.

One basic purpose of any civil service statute is to regulate the suspension or discharge of covered employees and to impose restrictions and limitations upon the executive authority to otherwise act with impunity. To conclude, as the City would have us do, that executive authority exists to suspend police officers pending the Mayor's approval of a police trial court decision—apart from the question of when the right of appeal to the Civil Service Commission ripens—renders practically meaningless such basic purpose of this particular statute.

The appeal to No. 600 C.D. 1971 from the order entered to No. 246 October Term 1971, Court of Common

Pleas of Allegheny County, is dismissed and the order affirmed with direction to the parties to promptly proceed to convene new trial courts to hear the charges preferred and render decisions on the merits with respect to plaintiff police officers, and otherwise proceed consistent with this opinion. The parties to bear their respective costs.

The appeal to No. 949 C.D. 1971 from the order entered to No. 111 January Term 1972, Court of Common Pleas of Allegheny County, is dismissed for the reason that the Chancellor had reasonable grounds for refusing to grant the requested preliminary injunction and the order is accordingly affirmed. It is directed that further proceedings be promptly undertaken in this case consistent with this opinion. The parties to bear their respective costs.

CONCURRING AND DISSENTING OPINION BY JUDGE MENCER:

I concur in the dismissal of the appeal to No. 949 C.D. 1971 from the order entered to No. 111 January Term, 1972, Court of Common Pleas of Allegheny County, for the reason that the chancellor had reasonable grounds for refusing to grant the requested preliminary injunction.

I dissent to the dismissal of the appeal to No. 600 C.D. 1971 from the order entered to No. 246 October Term, 1971, Court of Common Pleas of Allegheny County. I hold the opinion that the unfortunate impasse that has existed between the police trial court and the Mayor has not created the irreparable harm necessary to warrant the issuance of a preliminary injunction.

Further, I would resist the call of the parties to pass upon the substantive legal issues involved in these cases on appeals from the granting and refusal to grant a

378

preliminary injunction. Our scope of review is limited to the narrow issue of whether the chancellor had reasonable grounds for his action. *McMullan v. Wohlgemuth*, 444 Pa. 563, 281 A. 2d 836 (1971).